## Case No. 13,387.

### STETTINIUS v. UNITED STATES.

[5 Cranch, C. C. 573; 2 Liv. Law Mag. 538.] [1]

Circuit Court, District of Columbia. Nov. Term, 1839.

INDICTMENT — CURRENCY ACT — JUSTIFICATION — BANK BILL—JURY.

1. An indictment upon the first section of the act of congress of the 7th of July, 1838, c. 212 [5 Stat. 297], "To restrain the circulation of small notes as a currency, in the District of Columbia, and for other purposes," should aver that the note passed, or offered to be passed, was "paper currency."

2. And an indictment upon the second section of the act should aver that the note issued was "paper medium, evidently intended for common circulation."

3. The passing of a note of less denomination than five dollars is not an offence against the statute, unless it be "paper currency," or "paper medium, evidently intended for common circulation."

4. The offence, under the statute, does not consist in circulating paper as currency, but in passing paper currency,—that which is already currency, or evidently intended for common circulation.

5. It is no justification, for passing such paper as the act prohibits, that it was passed in payment of a bona fide debt, nor that it was passed with intent that it should be carried out of the District, nor that the defendant was agent of the railroad company.

6. The term "bank bill," as used in the act, does not, of itself, purport to be paper currency, without a special averment to that effect.

7. The jurors are not judges of the law, even in a criminal case. They have the power to give a general verdict upon the general issue, which includes the question of law, as well as of fact; but when, by pleading, or by special verdict, or demurrer to evidence, the law is separated from the fact, they have no right to decide the law. It must be decided by the judge.

[Cited in U. S. v. Taylor, 11 Fed. 473; Sparf v. U. S., 156 U. S. 79, 15 Sup. Ct. 284.]

[Cited in Com. v. Van Tuyl, 1 Metc. (Ky.) 2; State v. Burpee (Vt.) 25 Atl. 972.]

8. The right and the power of the jury, whatever they may be, are exactly alike in civil and criminal cases.

9. The argument of counsel on the law should be addressed to the judge; and whenever the question of law is judicially presented to him unmixed with the fact, either by demurrer to the evidence, a special verdict, or by motion for an instruction to the jury upon a hypothetical state of facts, it is not only the right, but the duty of the judge, to decide the question. The right of the judge to instruct the jury as to the law of the case, is not confined to the giving of such instructions as may be asked. After the argument of counsel has been closed on both sides, he may, if he will, instruct the jury as to the law upon the whole evidence, leaving the question of fact entirely with the jury.

10. The process of attaint is obsolete in England, and never was in practice in this country.

11. In practice, both in this country and in England, the counsel for the defendants in criminal cases, have been allowed to argue the law to the jury upon the general issue.

12. The jury have the power to take upon themselves the responsibility of judging for

themselves of the meaning of the law; and they may, if they will, but not of right, find a verdict against law; and such a verdict, if in favor of the defendant, will be as conclusive and effectual as if it were according to law.

13. According to the general practice of the courts in this country, the defendant seems to have a right to be heard before the jury, upon his construction of the law, if the court has not already, after hearing the argument of the defendant's counsel, instructed the jury upon the law in the same case: but there are few, if any, courts of criminal jurisdiction, who will suffer counsel to appeal from the court to the jury, upon a question of law which the court has decided against the defendant after he has orally joined issue upon the question and argued it before the court.

14. If the defendant's counsel does not join in the argument to the court, but insists upon arguing it to the jury, the court will require him to proceed with his argument to the jury, and will, after argument, give or refuse such instruction as the court shall think proper.

15. It is the duty of the jury to follow the law as laid down by the court.

Error to the criminal court of the District of Columbia. Hon. James Dunlop, sole judge, upon two indictments, both exactly in the same form.

The first (No. 106) charges that the defendant, on the 15th of October, 1839, at Washington county, with force and arms, "did pass, and offer to pass, to George McCawley, within the District of Columbia, to wit, at the city of Washington, in the county of Washington, in the District aforesaid, a certain note, and bank bill for the payment of one dollar, being of a less denomination than five dollars, against the form of the statute in such case made and provided, and against the peace and government of the United States." In the other indictment (No. 107) the name of Electius Semmes was substituted for that of George McCawley. Upon this indictment (No. 107) the jury returned the following verdict: "We, the jurors in the case of United States v. Samuel Stettinius, are of opinion that he is guilty of passing to the witness in the case, notes of a less denomination than five dollars, in the manner and at the time and place stated in the evidence; but, from the said evidence, not guilty of circulating them in the District of Columbia. November 22, 1839." The parties agreed to receive this "as a special verdict, as if formally made out as such, and to be taken in connection with, and considered as referring to, the evidence as stated." Upon the indictment No. 106, there was a general verdict, "Guilty."

The evidence stated, as given by the United States in support of the indictment No. 106, for passing the note to George McCawley, was, that the United States offered "a competent witness," who proved that the day after the present suspension by the banks of this District, of specie payments, which was on the 11th of October, 1839, "he was going to Baltimore in the railroad cars, and gave the traverser, at the railroad office in Washington city, in order to pay for his passage, a five-dollar note, who gave him in change, just as the

[Reported by Hon. William Cranch, Chief Judge. 2 Liv. Law Mag. 538, contains only a partial report.]

cars were about to start, two notes of one dollar each, of Cohen's Bank in Maryland; that the said traverser was then acting as agent of the Baltimore & Ohio Railroad Company, which is admitted to be a company incorporated by an act of congress; that the traverser knew that he (the witness) was going to Baltimore in the cars, at the time; that he took the notes with him to Baltimore, and brought them back again to Washington, where he resides." In support of the indictment No. 107, for passing a one-dollar note and bankbill to Electius Semmes, a bill of exceptions states, that "a competent witness was sworn on the part of the United States, who proved, that on the 15th of the last month (October, 1839) he was going to Baltimore in the railroad cars, and offered to the traverser in the city of Washington a five-dollar bank note to pay his passage in the cars; the traverser was acting as agent of the Baltimore and Ohio Railroad Company in said city. The traverser took the note, and gave, in change, to the witness, an half dollar in silver and two one dollar notes. He asked the traverser if he was passing dollar notes, to which he replied, 'Why, Mr Semmes, what can I do?' The witness went to Baltimore in the cars, and when there passed the notes away, without difficulty, at par. He did not remember of what institution the notes were, but thought it likely they were Maryland notes. It was admitted that the railroad company was chartered by congress."

At the trial, several bills of exceptions founded upon the evidence, as stated in the testimony of the two witnesses, were taken to the instructions given or refused by the judge.

Upon the trial of the general issue in the criminal court, District of Columbia, upon the indictment No. 106, four bills of exceptions were taken by the defendant. (1) The first was to the following instruction to the jury, given by the judge at the motion of the district attorney, namely: "That if they believe the evidence as above stated" (in support of this indictment No. 106) "to be true, then the passing of the note as above stated, if believed to be true, was a violation of the act of congress, entitled 'An act to restrain the circulation of small notes as a currency in the District of Columbia; and for other purposes,' approved July 7, 1838; and that the said act of congress is a valid and constitutional law in force in this district." (2) The second bill of exceptions, in the case No. 106, is to the refusal of the judge, at the motion of the defendant's counsel, to instruct the jury, that "if they believe from the evidence that the note in question, if passed at all as stated by the witness, was passed by the traverser in payment of a bona fide debt due by him to the witness, then the act does not come within the prohibition of the law of congress, and the traverser is entitled to a verdict of acquittal." (3) The third bill of exceptions, upon the trial of this issue, is to the refusal to instruct the jury at the motion of the de-

fendant's counsel, "that, should they be of opinion from the evidence, that the defendant did pass the note named in the indictment, but with the intent that the same should be carried into the state of Maryland, and not to be circulated within the District of Columbia, then the defendant is entitled to an acquittal." (4) The fourth bill of exceptions, upon this issue, was as follows: "Upon the trial of this cause, and after the argument of counsel had closed, and before the jury had retired, the court, in a charge given to the jury, after stating that the jury might decide upon the law and the evidence, and, in rendering a general verdict, had a constitutional right so to do, stated that the jury would take upon itself a very great responsibility, which they ought not to do, in deciding upon the law of the case, in opposition to the opinion of the court; and that they ought not to take upon themselves to render a verdict calculated to revoke the legislation of congress, composed of many constitutional lawyers; and that it increased the responsibility of the jury so to decide, in this case, in favor of the defendant, upon the law, because the United States could not appeal; whereas if they found the defendant guilty, he might; and might have the law interpreted, and reverse the judgment, if erroneous; and further said, that if the fact was proved, of passing the note once, the case was brought within the act of congress. To this charge of the court, the defendant by his counsel excepts, because the court ought not to have given said charge, which was calculated to intimidate the jury, and to destroy their free and independent exercise of opinion in the case; and because the said charge was calculated to induce the jury to render a verdict against the defendant for reasons which ought not to operate on their minds; and that the court erred in stating that if the facts were proved to the satisfaction of the jury, the case was brought within the act of congress; and it is prayed that this bill of exceptions may be signed and sealed, this 21st November, 1839."

Upon the trial of the issue upon the indictment, No. 107, the defendant's counsel took three bills of exceptions. (1) The first states that the United States district attorney prayed the court to instruct the jury, that if they believed the evidence aforesaid (namely, the evidence contained in the testimony of the witness, as before stated, who was examined in support of this indictment No. 107), "then the passage of the note charged in the indictment was a violation of the act of congress, entitled," &c. "and that the jury are bound by the said act (if they believe the facts proved by the witness), to find the traverser guilty: And thereupon the counsel for the traverser objected to the court's giving the said instruction, or giving any instruction as to the law, to the jury; and declined arguing the law to the court, on the ground that they had a right to argue to the jury, both on the law and the evidence. And the court decided,

on this objection being made, that the traverser's counsel would be allowed to argue the law to the jury, and that after such argument the court would instruct the jury as to the law; and thereupon the law was argued to the jury by the counsel for the traverser, and by the United States attorney; and the court, after the said argument, was asked by the United States attorney to give the instruction before prayed; which instruction the court gave. To this instruction, so given, the traverser by his counsel excepts," &c. (2) The second bill of exceptions taken upon the trial of this issue, is to the refusal of the court to instruct the jury, that "if they should be of opinion that the defendant did not pass the note for and in lieu of gold and silver, and that he did not intend to put the same into circulation in the District of Columbia, then the defendant is entitled to an acquittal." (3) The third bill of exceptions, upon the trial of this issue, is to the refusal of the court to instruct the jury, upon the evidence aforesaid, that if they "believe that the note passed by the defendant, was passed to a person who, as the defendant knew, was going immediately to Maryland, as a passenger in the railroad cars, without any opportunity of circulating said note in the District of Columbia, before leaving said district, and that said note was issued and redeemable in Maryland, and that said person did immediately after receiving the said note, leave the said District, without circulating it here, and did pass it off in the state of Maryland, then the jury may infer that the note was not passed by the defendant as paper currency, to circulate in said District and that the case is not within the spirit and intention of the act of congress."

The act of congress of the 7th of July, 1838 (5 Stat. 297), entitled "An act to restrain the circulation of small notes as currency in the District of Columbia, and for other purposes," upon which this prosecution is supposed to be founded, provides in the first section, "that after the 10th day of April" (then) "next, it shall not be lawful for any individual, company, or corporation to issue, pass, or offer to pass, within the District of Columbia, any note, check, draft, bank bill, or any other paper currency, of a less denomination than five dollars; and if any person or corporation shall violate the provisions of this section, the person so offending, or, in case of a corporation so offending, the officers of any such corporation for the time being, shall be liable to indictment by the grand jury of the county, within the District where the offence shall have been committed, and the person so offending, or the officers of the corporation so offending, shall, on conviction thereof, be fined in a sum not exceeding $50, at the discretion of the court, for every offence; one half of the said fine shall be paid to the prosecutor; the other half shall be for the use of the county where the offence shall have been committed." "And the person so offending, and the officers of any corporation, shall also be liable to pay the amount of any note, bill, check, draft, or other paper, constituting part of such currency, to any holder thereof, with all costs incident to the protest and legal collection thereof, with fifty per cent. damages for nonpayment on demand, to be recovered by action of debt; and in case of judgment for the plaintiff, execution thereon shall be had forthwith; and it shall be the duty of the district attorney of the District of Columbia, to commence prosecutions against all persons, and every corporation offending against this section, of which he shall have knowledge or probable information. And in case of corporations, the prosecution shall be against the president, or any director or cashier thereof for the time being; and it shall be the duty of the grand jurors to present all such offences of which they have knowledge or probable information; and that no member of a grand jury shall be ignorant of his duty in this particular, it shall be the duty of the court having cognizance of all offences against this section to give the same in charge to the grand juries at the commencement of the term next after the passage of this act. And in the second section it is "further enacted, that from and after the passage of this act, it shall be unlawful for any individual, company, or corporation, to issue de novo, or knowingly to pass, or procure to be issued, passed, or circulated within the District aforesaid, any note, check, bank bill, or other paper medium of the denomination aforesaid, evidently intended for common circulation, as for and in lieu of small change in gold or silver, or for any other pretence whatever, and which shall be issued and circulated for the first time after the period above limited in this section, under the penalties provided in the foregoing section."

C. Cox and R. J. Brent, for plaintiff in error.

Mr. Key, for the United States.

CRANCH, Chief Judge, delivered the opinion of the court; THRUSTON, Circuit Judge, dissenting.

The judgment below was against the defendant upon both indictments, although it is understood that a motion had been made in arrest of judgment. The record had not been made up at full length, and there is no formal assignment of errors; but in argument the counsel for the traverser contend,

1. That there is error in overruling the motion in arrest of judgment, because the indictment does not substantially set forth any offence against the statute. The gist of the offence intended to be forbidden by the statute, and punished, is the issuing of paper currency of a less denomination than five dollars. Unless, therefore, the notes passed by the defendant were such notes as were "paper currency," and which, in the second section, is called "paper medium of the denomi-

nation aforesaid, evidently intended for common circulation, as for and in lieu of small change in gold or silver, or any other pretence whatever," he has committed no offence against the statute. Its title (which may be resorted to, to ascertain the evil which was in the contemplation of the legislature, although it will not restrict the enacting clauses, if they clearly go beyond it) is, "to restrain the circulation of small notes as a currency;" and the enacting clauses forbid the issuing or passing of "any note, check, draft, bank bill, or any other paper currency of a less denomination than five dollars;" and "any note, check, bank bill, or other paper medium of the denomination aforesaid, evidently intended for common circulation, as for and in lieu of small change in gold or silver, or for any other pretence whatever." It is clear that negotiable notes, checks, and drafts for a less sum than five dollars, may be issued or passed from debtor to creditor in bonâ fide payment of a debt, or for the purchase of goods, in the common course of mercantile transactions, without incurring the penalty of the statute. The passing of a note, check, or draft is primâ facie a lawful act; and every man is presumed innocent until the contrary appears.

All the facts charged in the indictment may be true, and yet the traverser not guilty. If the indictment had simply charged the passing of a note, check, or draft for the payment of one dollar, it would not have charged any offence, unless the note had been averred to be, "paper currency," or "paper medium," &c. But it charges the traverser with passing a note and bank bill. If the jury had found the traverser guilty of passing the note only, he must have been acquitted, because the passing of the note was no offence unless it was "paper currency," or "paper medium evidently intended for common circulation." Is the word bank bill better than note? Does the name, per se, import paper currency without an averment that it was paper currency? It might have been a bank bill, and yet be what the brokers call an uncurrent bank bill, or a bank bill not payable to order, or bearer. It might have been the bill of a bank long since broken, and whose notes are no longer current. If the names, "note," "draft," and "check," are insufficient, per se, we do not perceive why the name "bank bill" should not be insufficient also. In the cases of U. S. v. Ringgold [Case No. 16,167] and of U. S. v. Milburn [Id. 15,768], this court decided, that under the statute which prohibited the keeping of "a faro bank or other common gaming table," an indictment for keeping a faro bank was not sufficient without also averring it to be a common gaming table, or a common faro bank. Although I did not concur in those decisions, yet they are binding upon this court, in like cases. I dissented, in those cases, because I thought that the term "faro bank" did, per se, import a common gaming table; and that it would be tautology to say

a common faro bank. In the present case I do not think that the names, "note," "check," and "draft," or even bank bill, do of themselves import a paper currency, so as to dispense with an averment, in the indictment under the first section of the act, that they were paper currency; without such an averment and without setting forth the note or bill, so that the court may judge whether it was such a note or bill as is meant to be prohibited by the statute, we think the indictment does not charge an offence against that section; and that the judge erred in not arresting the judgment. See State v. Scribner, 2 Gill & J. 251, and The Mary Anne, 8 Wheat. [21 U. S.] 386, 389.

Another reason suggested in arrest of judgment is, that the act of congress is unconstitutional, because congress cannot regulate the currency unless by some uniform rule operating equally upon all the states and territories. The answer, to this is, that congress, in legislating for this district, has the same power which a state has in legislating for the state, superadded to the power of legislating over all the states and territories as to the matters within its constitutional jurisdiction.

2. The second error, suggested in argument, is, that the special verdict (in the case No. 107,) did not justify the judgment against the traverser; but is, in effect a verdict of acquittal, inasmuch as it finds him not guilty of circulating the notes in the District of Columbia. This special verdict, if extended according to the agreement of the counsel, would state: That Electius Semmes, the person named in the indictment, on the 15th of October, 1839, was about to go to Baltimore in the state of Maryland, in the railroad cars of the Baltimore and Ohio Railroad Company; the same company then and there being a company chartered by congress, and in the city of Washington, in the county of Washington, in the District of Columbia, offered to the traverser, who was then and there acting as the agent of the said company, a five-dollar bank note to pay for his passage in the said cars in the city of Washington. That the traverser took the said note and gave in change to the said Electius Semmes, a half dollar in silver and two one-dollar notes, the same being notes issued and payable in the state of Maryland. That the said Electius Semmes went to Baltimore aforesaid, on the said day, in the said cars, and when in Baltimore passed away the said two notes without difficulty at par, and did not circulate them in the District of Columbia as a currency.

Being of opinion that the passing of a note of a less denomination than five dollars is not an offence against the statute, unless it be "paper currency," or "paper medium of the denomination aforesaid, evidently intended for common circulation, as for and in lieu of small change." or for some other pretence, we think the special verdict, if not a verdict for

the traverser, is an imperfect verdict, in not finding that the notes passed by the traverser were "paper currency," or "paper medium evidently intended for common circulation," &c., and that it does not support the judgment against the traverser. It does not say any thing of the bank bill charged in the indictment. But, as the evil to be remedied was "the circulation of small notes as a currency, in the District of Columbia," and as the jury have expressly found that the traverser did not circulate the notes in the District of Columbia, as a currency; and inasmuch as circulating is passing away in change or otherwise, it would seem, at first view, that the verdict amounts to an acquittal, as it denies the commission of the act which the legislature intended to guard against. But they have not made the offence to consist in circulating paper as currency, but in passing paper currency. It must be paper currency before, or at the time of passing it; that is, as explained by the second section of the act, "paper constituting part of such currency;" or as further explained in the same second section, "paper medium of the denomination aforesaid, evidently intended for common circulation," &c. A denial that the traverser passed the paper as currency, is not a denial that he passed paper currency; so that we think the verdict is not a verdict of acquittal.

3. The next error suggested is that the judge erred in instructing the jury (at the prayer of the United States attorney, in the trial of the issue upon the indictment No. 106, as stated in the traverser's first bill of exceptions upon the trial of that issue) that if they believed the evidence, as above stated in support of that indictment to be true, the passing of the note as therein stated, was a violation of the act approved 7th July, 1838, entitled, "An act to restrain," &c. According to the interpretation of the act which we have before given, it is evident that the offence was not committed, unless the note was paper currency, or paper medium evidently intended for common circulation, &c.; a fact not stated in the evidence, and not found by the jury. We are, therefore, of opinion, that the judge erred in giving that instruction.

4. The next error suggested, consists in the refusal of the judge to instruct the jury (as prayed by the traverser in his second bill of exceptions upon the trial of the issue upon the indictment, No. 106) as follows: "That if they believe, from the evidence, that the traverser passed the note in payment of a bonâ fide debt due by him to the witness, the act does not come within the prohibition of the law of congress." This instruction seems to have been very properly refused, and the exception does not appear to be insisted upon in argument.

5. The fifth error suggested is, the refusal of the judge to instruct the jury, at the prayer of the traverser (as stated in his third bill of exceptions upon this issue), "that

should they be of opinion from the evidence, that the traverser passed the note with intent that the same should be carried into the state of Maryland, and not be circulated within the District of Columbia, then the traverser is entitled to an acquittal." This instruction, also, we think was correctly refused, as the act does not make the intent to circulate an ingredient in the offence. The offence is the passing of "paper currency of a less denomination than five dollars," and the penalty for doing this, was the means by which the legislature intended to restrain the circulation of small notes as a currency within the District of Columbia.

6. It was also suggested in argument, that the judgment ought not to have been rendered against the traverser on the special verdict, because it finds that the traverser, in passing the notes, was then acting as agent of the Baltimore and Ohio Railroad Company; the same then being a company incorporated by an act of congress; that it was, therefore, an act of the company; and that, according to the provisions of the statute, the indictment should have been against the president, or a director, or the cashier of the company, and not against the traverser. But the jury have not found that the passing of the notes was the act of the company; nor that they were passed by the order or consent of the company, without which the company cannot be charged criminally. The jury have found a fact, from which they might have inferred and found that the notes were passed by the company, but not having found that fact expressly, the court cannot infer it and make it the foundation of a judgment of acquittal in favor of the traverser. He might well have been acting as the agent of the company, and yet have no authority from them to pass the notes; and such authority to do an illegal act (if it were such) cannot be presumed. We think, therefore, that the judge did not err in refusing to arrest the judgment on that ground.

7. The seventh error suggested, is stated in the traverser's first bill of exceptions upon the trial of the issue upon the indictment No. 107, and consists in the judge's overruling the objection of the traverser's counsel, to the judge's giving any instruction to the jury as to the law; the traverser's counsel having declined arguing the law to the court, on the ground that they had a right to argue to the jury both on the law and the evidence; to the overruling of which objection, and to the instruction which the judge, at the prayer of the United States attorney, gave to the jury, which was similar to that given at his prayer upon the trial of the issue on the indictment No. 106, the traverser's counsel excepted. As to the question whether the instruction thus given to the jury, in point of law, was correct, we have already said, in considering the instruction given upon the trial of the issue on the other indictment, that the offence was

not committed, unless the note was paper currency, or paper medium evidently intended for common circulation; a fact not found by the jury, nor stated in the prayer for the instruction; and therefore we are of opinion that the judge erred in giving that instruction. The objection to the judge's giving any instruction to the jury as to the law, when the defendant's counsel declines arguing the law to the court, and insists upon arguing it to the jury, seems to be founded upon the idea that the jurors are the sole judges of the law, and are under no obligation to respect the decisions of the judge upon the questions of law arising in a criminal cause. The right of the jury to find a general verdict upon the general issue in a criminal cause, is not disputed nor doubted; and as guilt consists of law and fact, and cannot be ascertained but by coupling them together, and comparing them, and applying the facts to the law, they must, in finding such a general verdict, decide the law thus coupled with the facts in that cause. But when the jurors thus took upon themselves to decide the law by a general verdict of not guilty, they subjected themselves, under the old English statutes, to very severe punishment, upon a writ of attaint, if the grand inquest should convict them of finding a false verdict. To avoid this risk, it was formerly common for the jurors to render special verdicts, stating all the facts of the case, and referring the question of law to the court; but the practice of setting aside verdicts, upon motion, and granting new trials, has so superseded the use of attaints, that there are few instances of an attaint in the books later than the sixteenth century. 3 Bl. Comm. 406. Yet as late as Sir Matthew Hale's time, according to his opinion, the king might have attaint upon a verdict of acquittal, although the prisoner, if convicted, could not; because his guilt is confirmed by two inquests; the grand and the petit jury. The right and the power of the jury to decide the law and the fact together, by a general verdict upon the general issue, is not greater in criminal causes than in civil. The effect only is different. In civil causes, the court will set aside the verdict, if against its opinion of the law, whether the verdict is against the defendant or the plaintiff; but in criminal causes, if the verdict be in favor of the defendant, inasmuch as the king might have a writ of attaint and reverse the judgment; and as the prisoner is not to be put twice in jeopardy, nor to be twice vexed for the same offence, and as he could not have attaint if the verdict should be against him, the courts have uniformly, for more than two centuries, refused to award a new trial when the prisoner has been acquitted upon a general verdict of not guilty. This conclusive effect of a verdict of acquittal does not arise from the right of the jury to decide the law definitively in the case, because if the ver-

dict of the jury had been against the defendant, contrary to law, or to the court's exposition of the law, the court unquestionably had the right and the power to set aside the verdict as being contrary to law, and to award a new trial. This could not be the case if the jury had the exclusive right to decide the law. If they had, the verdict would be as conclusive in the one case, as in the other.

It is admitted by all who have advocated the right of the jury to decide the law in criminal cases, that that right extends only to the finding of a general verdict upon the general issue. When the issue is on some collateral point, it involves no question of law, but is confined exclusively to facts. When the verdict was upon such a collateral issue, there was no attaint. That process lay only in cases where the jury undertook to decide the law by a general verdict on the general issue. Whenever, by the pleadings, the law was separated from the fact, so that each could be seen and considered by itself, no pretence that the jury had a right to decide the pure unmixed question of law, has ever been set up by the wildest advocate of the rights of juries. In the trial of the impeachment of Judge Chase, Mr. Randolph, one of the managers of the prosecution, in speaking of this right of juries to decide the law, calls it "their undeniable right of deciding upon the law as well as the fact necessarily involved in a general verdict." He said, also, "There is, in my mind, a material difference between a naked definition of law, the application of which is left to the jury, and the application, by the court, of such definition to the particular case upon which the jury are called upon to find a general verdict. Surely, there is a wide and evident distinction between an abstract opinion upon a point of law, and an opinion applied to the facts admitted by the party accused, or proven against him." Speaking of the prior decisions of the same points of law in some former cases by other judges, Mr. Randolph said, "They exercised the acknowledged privilege of the bench in giving an opinion to the jury on the question of law after it had been fully argued by counsel on both sides." Again, he said, "I do not deny the right of the court to explain their sense of the law to the jury, after counsel have been heard, but I do deny that the jury are bound by such exposition." Mr. Early, another of the managers of that impeachment, said, "It is no part of my intention to deny the right of judges to expound the law in charging juries; but it may be safely affirmed, that such right is the most delicate they possess, and the exercise of which is to be guarded by the utmost caution and humanity." Mr. Edward Tilghman, who was examined as a witness in the trial of that impeachment, testified, that in Pennsylvania, the judges, "in their charge to the jury, state the law and the evidence, and apply the law

to the evidence. The court generally hear the counsel at large on the law; and they are permitted to address the jury on the law and the fact; after which the counsel for the state concludes. The court then states the evidence to the jury, and their opinion of the law, but leaves the decision of both law and fact to the jury." In Croswell's Case, 3 Johns. Cas. 346, the counsel for the defendant admitted it "to be the duty of the court to direct the jury as to the law; and it is advisable for the jury, in most cases, to receive the law from the court, and in all cases they ought to pay respectful attention to the opinion of the court; but it is also their duty to exercise their judgments upon the law as well as the fact; and if they have a clear conviction that the law is different from what it is stated to be by the court, the jury are bound, in such cases, by the superior obligations of conscience, to follow their own convictions." The same counsel said further, that "in civil cases, the power of the court to decide the law, is absolute and conclusive, and may be rightfully exerted. That in criminal cases, the law and the fact being always blended, the jury, for reasons of a political and peculiar nature, for the security of life and liberty, are intrusted with the power of deciding both law and fact." Judge Chase, in his answer to one of the articles of impeachment, says, "He well knows that it is the right of juries in criminal cases, to give a general verdict of acquittal, which cannot be set aside on account of its being contrary to law; and that hence results the power of juries to decide on the law as well as on the facts in criminal cases." "But he also knows, that in the exercise of this power, it is the duty of the jury to govern themselves by the laws of the land, over which they have no dispensing power; and their right to expect and receive from the court all the assistance which it can give for rightly understanding the law. To withhold this assistance in any manner whatever; to forbear to give it in that way which may be most effectual for preserving the jury from error and mistake; would be an abandonment, or a forgetfulness of duty, which no judge could justify to his conscience, or the laws." And in the opinion which the court had prepared in the Case of John Fries [Case No. 5,126], they said: "It is the duty of the court, in all criminal cases, to state to the jury their opinion of the law arising on the facts; but the jury are to decide in this, and in all criminal cases, both the law and the facts, on their consideration of the whole case."

Mr. Hargrave, in his note 7 to Co. Litt. 155b, has given a very able opinion upon this question of the right of the jury to decide the law in criminal cases. Lord Coke, in folio 155b, had said: "The most usual trial of matters of fact is by twelve such men; for 'ad quæstionem facti non respondent judices'; and matters in law the judges ought to decide

and discuss; for 'ad quæstionem juris non respondent juratores.'" In his note to this passage, Mr. Hargrave says: "This decantatum (as Lord Chief Justice Vaughan calls it, on account of its frequency in the books) about the respective provinces of judge and jury, hath, since Lord Coke's time, become the subject of very heated controversy, especially in prosecutions for state libels; some aiming to render juries wholly dependent on the judge for matters of law, and others contending for nearly a complete and unqualified independence." After stating several of the old cases, he says: "In respect to my own ideas on this subject, they are at present to this effect: 'On the one hand, as the jury may, as often as they think fit, find a general verdict, I, therefore, think it unquestionable, that they may so far decide upon the law as well as the fact; such a verdict necessarily involving both. In this, I have the authority of Littleton himself, who hereafter writes, that if the inquest will take upon them the knowledge of the law upon the matter, they may give their verdict generally. Ante, § 368, and post, folio 228.' But, on the other hand, I think it seems clear that questions of law generally, and, more properly, belong to the judges; and that, exclusively of the fitness of having the law explained by those who are trained to the knowledge of it by long study and practice, this appears from various considerations: (1) If the parties litigating agree in their facts, the cause can never go to a jury; but is tried on a demurrer, it being a rule, and I believe without exception, that issues in law are determined by the judges, and only issues of fact are tried by a jury (ante, 71b). (2) Even when an issue in fact is joined, and comes before a jury for trial, either party, by demurring to the evidence, which includes an admission of the fact to which the evidence applies, may, so far, draw the cause from the cognizance of the jury, for, in that case the law is reserved for the decision of the court from which the issue of fact comes; and the jury is either discharged, or, at the utmost, only ascertains the damages. Ante, 72a; Doug. 127, 213; Bull. N. P. (2d Ed.) 313. (3) The jury is supposed to be so inadequate in finding out the law, that it is incumbent upon the judge who presides at the trial to inform them what the law is; and as a check to the judge, in the discharge of his duty, either party may, under the statute of Westminster II. c. 31, make his exception in writing to the judge's direction, and enforce its being made part of the record, so as afterwards to found error upon it. See post, 2 Inst. 426; Trials per Pais (8th Ed.) 222, 466; Fabrigas v. Mostyn [2 W. Bl. 929] in 11 State Trials; Money v. Leach, 3 Burrows, 1742; Bull. N. P. (2d Ed.) 315. (4) The jury is ever at liberty to give a special verdict, the nature of which is to find the facts at large, and leave the conclusion of law to the judges of the court from which the issue comes. Formerly, indeed, it

was doubted whether in certain cases in which the issue was of a very limited and restrained kind, the jury was not bound to find a general verdict. But the contrary was settled in Dowman's Case, 9 Coke, 11b; and the rule now holds both in civil and criminal cases, without exception. See post, 227b; Staund. P. C. 165a; Oneby's Case, 2 Ld. Raym. 1494. (5) While attaints, which still subsist at law, were in use, it was hazardous in a jury to find a general verdict, where the case was doubtful, and they were apprised of it by the judges, because, if they mistook the law they were in danger of an attaint. Post, 228a; Hob. 227; Vaughn, 144; 2 Hale, P. C. 310; Gilb. C. P. (2d Ed.) 128. (6) If the jury find the facts specially, and add their conclusion as to the law, it is not binding on the judges, but they have a right to control the verdict and declare the law as they conceive it to be; at least, this is the language of some most respectable authorities. Staund. P. C. 165a; Plowd. 114, a, b; 4 Coke, 42b; 1 Hale, P. C. 471, 476, 477; 2 Hale, P. C. 302. (7) The courts have long exercised the power of granting new trials in civil cases where the jury find against that which the judge trying the cause, or the court at large, holds to be law; or where the jury find a general verdict, and the court conceives that, on account of difficulty of law, there ought to be a special one. King v. Poole, Cas. t. Hardw. 26. Though, too, in criminal cases the judges do not claim such a discretion against persons acquitted, the reason, I presume, is, in respect of the rule, that 'Nemo bis punitur, aut vexatur pro eodem delicto'; or the hardship which would arise from allowing a person to be twice put in jeopardy for one offence; and if this be so, it only shows that on that account, an exception is made to a general rule. 4 Bl. Comm. (8th Ed.) 361: 2 Ld. Raym. 1585; 2 Strange, 899; 4 Coke, 40a; Wing. Max. 695. Upon the whole, as my mind is affected with this interesting subject, the result is. that the immediate and direct right of deciding upon questions of law, is intrusted to the judges; that in a jury, it is only incidental; that, in the exercise of this incidental right, the latter are not only placed under the superintendence of the former, but are, in some decree, controllable by them; and therefore that in all points of law, arising on a trial, the jury ought to show the most respectful deference to the advice and recommendation of judges. In favor of this conclusion, the conduct of juries bears ample testimony; for, to their honor be it remembered, that the examples of their resisting the advice of a judge, in points of law, are rare, except where they have been provoked into such an opposition by the grossness of his own misconduct, or betrayed into an unjust suspicion of his integrity by the misrepresentation and ill-practice of others. In civil cases, particularly, where the title of real property is in question, juries almost universally find a special verdict as often as the judge rec-

ommends their so doing; and though in criminal cases special verdicts are not frequent, it is not from any averseness to them in juries, but from the nature of criminal causes, which depend more upon the evidence of facts, than any difficulty of law. Nor is it any small merit in this arrangement, that in consequence of it, every person accused of a crime, is enabled by the general plea of not guilty, to have the benefit of a trial, in which the judge and the jury are a check upon each other; and that this benefit may always be enjoyed, except in such small offences as are left to the summary jurisdiction of a justice of the peace; which exception, from the necessity of the times is continually increasing; but which, however, cannot be too cautiously extended to new objects. Thus considered, the distinction between the office of judge and jury, seems to claim our utmost respect. May this wise distribution of power, between the two, long continue to flourish, unspoiled, either by the proud encroachment of ill-designing judges, or the wild presumption of licentious juries."

The calm manner in which the subject is considered in the above opinion, adds as much to its weight as it derives from the high character of its author as a jurist. Blackstone, in his Commentary (volume 4, p. 361), speaking of the right of juries, says, "They have an unquestionable right of determining upon all the circumstances, and finding a general verdict, if they think proper so to hazard a breach of their oaths; and if their verdict be notoriously wrong, they may be punished, and the verdict set aside by attaint at the suit of the king, but not at the suit of the prisoner. But the practice, heretofore in use, of fining, imprisoning, or otherwise punishing jurors, merely at the discretion of the court, for finding their verdict contrary to the direction of the judge, was arbitrary, unconstitutional and illegal." And Lord Chief Justice Hale (Hale, P. C. 313). in speaking of the fine imposed upon the jurors, in Bushell's Case [Vaughan, 153]. for not finding William Penn and others guilty, according to the direction of the court, says, "But it was agreed by all the judges of England (one only dissenting) that this fine was not legally set upon the jury, for they are judges of matters of fact; and although it was inserted in the fine that it was 'contra directionem curiæ in materiâ legis,' this mended not the matter, for it was impossible any matter of law could come in question till the matter of fact were settled and stated, and agreed by the jury; and of such matter of fact they were the only competent judges. And although the witnesses might per chance, swear the fact, to the satisfaction of the court, yet the jury are judges, as well of the credibility of the witnesses, as of the truth of the fact, for possibly they might know somewhat, of their own knowledge, that what was sworn was untrue: and possibly they might know the witnesses to be such as they could not be-

lieve; and it is the conscience of the jury that must pronounce the prisoner guilty. or not guilty. And to say the truth, it were the most unhappy case, that could be, to the judge, if he, at his peril, must take upon him the guilt or innocence of the prisoner: and if the judge's opinion must rule the matter of fact, the trial by jury would be useless." Blackstone, in citing this passage from Hale, has materially altered the language of the last clause of the last sentence. He says, "For as Sir Matthew Hale well observes, it would be a most unhappy case for the judge himself if the prisoner's fate depended upon his directions. Unhappy also for the prisoner; for if the judge's opinion must rule the verdict, the trial by jury would be useless." Hale says, "rule the matter of fact." Blackstone says, "rule the verdict." Hale speaks of the judge's controlling the jury as to the fact only. Blackstone makes him speak of the judge's controlling the jury generally as to their verdict, which may be in matter of law, or matter of fact. This makes so great a difference in the case that Hale's language as cited by Blackstone, has been used in support of the supposed exclusive right of the jury to decide the law in criminal cases (1 Ersk. 160); whereas the language of Lord Hale, in his own book, affords no such support, but evidently tends to support the contrary doctrine.

To the authorities already cited we might add that of Mr. Dane, one of the most able and learned jurists of New England, who has given to the profession a most valuable Abridgement and Digest of American Law in eight volumes, and founded a professorship of law in the Harvard University, and who from these circumstances may well be called the American Viner; but we shall only refer to his able argument in his seventh volume. c. 222, arts. 18 and 19, p. 382. Upon this point we will cite only one more authority. It is that of Mr. Justice Story, of the supreme court of the United States, in his opinion in the case of U. S. v. Battiste [Case No. 14,545]. in the circuit court of the United States for the Massachusetts district, at October term, 1835. Mr. Justice Story, in summing up to the jury said: "Before I proceed to the merits of this case, I wish to say a few words upon a point suggested by the argument of the learned counsel of the prisoner, upon which I have had a decided opinion during my whole professional life; it is, that in criminal cases, the jury are the judges of the law as well as of the fact. My opinion is that the jury are no more judges of the law, in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case tried upon the general issue. In each of these cases their verdict. when general, is necessarily compounded of law and of fact, and includes both. In each they must necessarily determine the law as well as the fact. In each they have the physical power to disregard the law as laid down to them by the court. But I deny that, in any case, civil or criminal. they have the moral right to decide the law according to their own notions or pleasure. On the contrary I hold it the most sacred, constitutional right of every party accused of a crime, that the jury should respond as to the facts and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is. the duty of the jury to follow the law as laid down by the court. This is the right of every citizen; and it is his only protection. If the jury were at liberty to settle the law for themselves, the effect would be, not only that the law itself would be most uncertain, from the different views which different juries might take of it; but in case of error there would be no remedy or redress by the injured party; for the court would have no right to review the law as it had been settled by the jury. Indeed it would be almost impracticable to ascertain what the law, as settled by the jury, actually was. On the contrary, if the court should err in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the particular. court may require. Every person accused as a criminal has a right to be tried, according to the law of the land; the fixed law of the land, and not by the law as a jury may understand it, or choose, from wantonness, or by ignorance, or accidental mistake, to interpret it. If I thought that the jury were the proper judges of the law in criminal cases, I should hold it my duty to abstain from the responsibility of stating the law to them upon any such trial. But believing. as I do, that every citizen has a right to be tried by the law, and according to the law; that it is his privilege, and truest shield against oppression and wrong, I feel it my duty to state my views fully and openly on the present occasion."

From these authorities we think we may draw the following conclusions:

1. That the judges are to decide every question of law, when the facts, upon which the question arises. are found, or stated; and in all cases where, by the pleadings, or the proceedings, the law and the facts are separated. It has never been pretended that the jury are to decide a pure question of law unmingled with the facts. The law and facts are separated by a demurrer to the evidence; by a special verdict; by a special plea, and by the hypothetical statement of facts, when, in the trial of a cause before the jury, the court is moved by the counsel on either side to instruct the jury as to the law arising from such supposed facts, if they should be found by the jury. This latter proceeding is in the nature of an anticipated special verdict, and, as far as it goes, separates the law and the facts as completely as could be done by a special verdict actually finding the same facts. This is a proceeding which either party has a right to adopt, if, in the opinion of the court, sufficient evidence has been given in the cause to justify the party in assuming the legal possibility that the jury

may find the facts to be as he has stated them in his motion for the instruction. This statement and motion to direct the jury upon the point of law, withdraw it from the jury and submit it to the judges, as in a special verdict; the only difference is that in the latter case the law is decided by the court upon an actual finding, and in the former upon an assumed, or supposed finding; and the court is as much bound to decide the question of law upon such a motion, as upon a demurrer to evidence, or a special verdict. This proceeding is applicable to criminal cases as to civil, and shows that the court is the proper and exclusive tribunal to decide the law in both classes of cases, whenever it can be decided without deciding the fact at the same time.

2. That the power of the jury to find a general verdict upon the general issue in a criminal case does not imply a right to decide the law of the case. The power is the same in a civil case, and yet it has never been supposed that the power of the jury, in a civil case, to render a general verdict on the general issue, was a right, or implied a right, to decide the law of the case. The right and the power of the jury, whatever they may be, as to deciding the law of the case, are exactly alike in both classes of cases; in both, the right and the power of the court are the same to set aside the verdict, if against the defendant, on the ground that it was a verdict against law; thereby clearly showing that the jury has no right to decide the law in either case; but that the court has. The most that can be said, is, that the jury has the power of rendering a general verdict upon the general issue, either according to law, or against law; but no one can suppose that they have a right to render a verdict against law. If in a criminal case they render a general verdict against the defendant, upon the general issue, against law, the court will at once set it aside, because it is against law; but if the verdict be for the defendant, the court, in favorem vitæ, will not set it aside, although against law; and this practice, or maxim, is probably grounded on the reasons before mentioned, and not upon the admission that the jury is the exclusive judge of the law, as well as of the fact, in criminal cases. If the jury, as some have contended, "are the sole judges of the law in criminal cases," the prisoner, however erroneously the law may be laid down by the prosecutor to the jury, would have no more right to ask the court to expound the law to them, than to ask the court to ascertain the facts; and, if the verdict should be against him, would have no right to ask the court to grant a new trial on the ground that the jury had either mistaken or disregarded the law. If juries are the exclusive judges of the law, in criminal cases, there can be no appeal, no writ of error, no new trial, even if the prisoner be convicted. The act establishing the criminal court of this District provides for a writ of error to bring the cause into this court. If the jury is to decide all the law, in criminal cases, their decisions of the law can never be reversed; for there are no means of ascertaining their decision upon a question of law, so as to bring it into review before this court; but when the judge decides the law, a bill of exceptions may be taken, and his judgment, if against the defendant, may be either affirmed or reversed upon a writ of error. In this very case, the defendant's counsel, by asking the court to instruct the jury as to the law, had admitted the right of the judge to decide the law. Again, the same act establishing the criminal court, provides that that court may, in any case, with the consent of the person accused, adjourn any question of law to this court, where it may be argued and decided. It is the court, and not the jury, who adjourn the question of law. It is to the court, therefore, that the question of law is to be made. These provisions of the act establishing the criminal court, are totally inconsistent with the doctrine, that, in criminal cases, the jury are the sole judges of the law. They show, that when a question of law arises, either party may require the judge to decide it, or to adjourn it to this court to be decided here.

3. If, then, it is the province of the judge to decide conclusively every question of law arising in the case, which may be judicially presented to him, unmixed with the facts; and if every question of law, arising in the trial of a cause, may be thus separated and presented to the judge, either by a demurrer to the evidence or a special verdict, or by motion to the court to instruct the jury as to the law arising upon an hypothetical statement of such facts as the party supposes the jury may find from the evidence, it follows that it is not only the right but the duty of the judge to decide every question which may be thus presented to him; and, upon the motion of either party, to give to the jury, during the trial, such instruction and opinion upon the law arising upon such hypothetical statement of facts, as such supposed facts would justify him in giving, if found in a special verdict. But the right of the judge to instruct the jury as to the law of the case, is not confined to the giving of such instruction as he may be asked to give. After the argument of counsel has been closed on both sides, he may, if he will, instruct the jury as to the law arising upon the whole evidence; leaving the question of fact entirely with the jury. This is the practice in the courts of England, and in those of many of the states of this Union. Again: If it is the right and the duty of the judge thus to decide all questions of law which can be separated from the facts, the argument of counsel, upon such questions, should naturally and properly be addressed to the judge.

But it has been contended, that in a crim-

inal case, upon the trial of the general issue, the counsel for the defendant has a right to argue the whole law of the case to the jury: and this is said to be a constitutional right. The sixth article of the amendments to the constitution of the United States declares "that in all criminal prosecutions, the accused shall enjoy the right" "to have the assistance of counsel for his defence." This is the whole constitutional provision upon the subject. This amendment was, no doubt, adopted because, in England it was a settled rule of the common law, that no counsel should be allowed a prisoner upon his trial upon the general issue, in any capital crime, unless some point of law should arise, proper to be debated. But the constitution does not give the counsel a right to address the jury upon the questions of law, which may arise in the trial of the general issue in a criminal case. It only gives him that assistance of counsel which was denied by the common law. The claim is, no doubt, founded upon the idea, that in criminal cases the jury are the sole judges of the law as well as of the facts, because, upon the general issue, they have the power, if they will, to find a conclusive verdict in favor of the defendant, contrary to law; and the judges are forbidden, by the humane maxim of the law, to set it aside. But in finding a verdict against the prisoner, upon the same issue, the jury are not the sole judges of the law; for if such verdict is contrary to law, in the opinion of the judges, they will set it aside and grant a new trial; so that the jury, at the same time, are, and are not, upon the trial of the same issue, in the same cause, the sole judges of the law and the facts; that is, if they are in any manner judges of the law, they are so only when they find a verdict for the defendant, on the general issue, but they are not so when they find a verdict against him. It is true that the court cannot control the jury in giving their verdict, nor compel them to find a special verdict. The only remedy for a verdict contrary to law, is a new trial; for no appeal or writ of error lies from the verdict of a jury; but for a general verdict of not guilty, upon the general issue, in a criminal case, there is no remedy; for the process of attaint is now obsolete in England, and, we believe, never has been resorted to in this country; certainly not in Maryland, whose common law remains the common law of this county, and who never adopted the English statutes on that subject. The only control exercised by the courts over juries is, to keep them together until they find such a verdict as will enable the court to render a judgment in the cause. But either party has a right to require the opinion of the court upon every question of law arising in the trial of the cause, especially where a writ of error will lie to another tribunal. If the judge should expound the law correctly and the

jury should find a general verdict contrary to such exposition, a writ of error would be of no avail. If the defendant, upon the trial, does not choose to ask the judge for an instruction to the jury upon the law of the case, and refuses to argue the question of law to the court upon an instruction asked by the attorney of the United States, but insists upon arguing the whole law of the case to the jury, and the verdict should be against him, and contrary to the law as he understands it; upon what ground can he ask the court for a new trial? Will he then contend that the jury had no right to decide the law? If so, he would be condemned out of his own mouth. He must say that the jury is not the proper tribunal to expound the law. Is it right, therefore, in the court, to suffer the defendant's counsel to argue the law to the jury who, confessedly, have no right to decide the law against him? In theory and in principal we should say no. The good old maxim is still in force: "Ad quæstionem facti non respondent judices; ad quæstionem juris non respondent juratores." But, in practice, it is allowed in the courts of England, and of some of these states; and it is upon this ground, namely, that as the jury may find a conclusive general verdict in favor of the defendant, upon the general issue, which involves both law and fact, they have a right to hear from the defendant, or his counsel, the defendant's construction of the law, and his reasons for such construction. Before the jury can apply the facts to the law which it is their peculiar province to do, they must know what the law is. They may ask the opinion of the court, but they are not bound to do so. They have the power to take upon themselves the responsibility of judging for themselves as to the meaning of the law; or they may, if they will, but not of right, find a verdict against law; and such a verdict against law, if in favor of the defendant, will be as conclusive and effectual as if it were according to law. But the jury have no more right to find a general verdict against law, in a criminal case than in a civil.

According to the general practice of the courts in this country, the defendant seems to have a right to be heard before the jury, upon his construction of the law, if the court has not already, after hearing the arguments of the defendant's counsel instructed the jury upon the law in the same case. But there are few, if any, courts of criminal jurisdiction, who will suffer counsel to appeal from the judge to the jury, upon a question of law which the court has decided against him after he has orally joined issue upon the question, and argued it before the court. This would be an indignity to which no court ought to submit. If the court has erred the defendant has a right to his writ of error, or to a motion for a new trial. But when the counsel for the defendant declines to

join in the issue of law to the court, tendered to him by the counsel for the prosecution, by his motion to the court to instruct the jury, this court has permitted the defendant's counsel to argue the question of law to the jury upon the general issue. This was done in the case of U. S. v. Fenwick [Case No. 15,086], indicted at March term, 1836, for a riot. The court, in that case, after argument by the counsel of some of the defendants, had decided a question of law against them. The counsel for some of the other defendants offered to argue the same question of law to the jury, in opposition to the instruction which the court had given. The court said, that after a point of law had been argued by the counsel of the parties, and the court had, at the request of either party, instructed the jury upon the point so argued, they could not permit the question of law to be reargued to the jury, in opposition to the instruction given by the court. But, it appearing in that case, that the counsel who had argued the question of law to the court, were not counsel for all the defendants, the counsel for other defendants, who had not joined in the argument to the court, and who said they had objected to the court's giving any instruction to the jury on that point, until they had argued it to the jury (although the court had not understood them as so objecting), were permitted to argue it to the jury,— Morsell, J., observing "that the court never denied the power of the jury to decide the law as well as the fact, in criminal cases, by finding a general verdict; but when either party has asked an instruction, and the other party has proceeded to argue the question before the court, and the court has given an instruction upon that question, the counsel has no right to argue the same question of law before the jury. If the party does not join in the argument to the court, but insists upon arguing it to the jury, the court will require him to proceed with his argument, and will, after the argument, give or refuse, such instruction, as the court shall think proper." The counsel for those defendants then proceeded to argue the law to the jury upon the whole case; the counsel for the United States replied, and concluded by requesting the court to instruct the jury upon the whole law of the case, which the court did in their charge to the jury. In the case of U. S. v. Columbus [Id. 14,841], at March term, 1837, after the court had given an instruction to the jury upon a question of law, the counsel for the defendant being about to argue to the jury against the instruction then just given, was stopped by the court, and informed that he could not be permitted to argue the point of law to the jury, against the instruction which the court had given them. The counsel contended that as he had not asked the opinion of the court upon that point he was not precluded from arguing it to the jury; that in

criminal cases the jury are judges of the law as well as of the fact, and therefore the law ought to be argued to them. The court observed, "that this court had always refused to permit counsel to argue the question of law, after it had been decided by the court in the cause. That the jury has a right to find a general verdict, which includes the question of law as well as of fact; but the jury has no right to decide the question of law disconnected from the fact; that this point had been decided early in the existence of this court, upon full argument, and that such had been the uniform decision and practice of the court, from its commencement more than thirty years ago." See the cases of Commonwealth of Virginia v. Zimmerman [Id. 16,968], in Alexandria, at January term, 1802, and Cotton's Case at the same term [unreported].

4. That when the court, after hearing the arguments of the parties, whether addressed to the court or to the jury, has instructed the jury upon the point of law, thus argued, the jury ought to respect such instruction, and not lightly substitute their own often crude expositions, or the sometimes wild or interested suggestions of counsel, for the deliberate, calm, and impartial opinion of judges, who ought to be, and generally are, selected for their knowledge of the law and their judicial integrity. We say, in the language of Mr. Justice Story, already cited: "It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law as laid down by the court. This is the right of every citizen, and it is his only protection." And we say, also, in the language of Mr. Justice Baldwin, of the supreme court of the United States, in the case of U. S. v. Wilson [Case No. 16,730]: "Their judgment is final, not because they settle the law, but because they either think it not applicable, or do not choose to apply it to the case." No person has more fully admitted, or rather insisted upon the right and the duty of the judge to instruct the jury in criminal causes, upon trial of the general issue, than Mr. Erskine, the great advocate of the rights of juries; and we refer to his printed speeches (volume 1, p. 113, 114, 163, &c.) and his whole argument upon the motion for a new trial in the Case of Dean of St. Asaph, indicted for a libel. The act of parliament, 32 Geo. III. c. 60, respecting the trial of prosecutions for libels, merely places such prosecutions on the same ground as other criminal trials, by authorizing the jury to find a general verdict on the general issue; but it expressly requires the judge who tries the cause, to give his opinion or directions to the jury on the matter in issue, "in like manner as in all other criminal cases."

Lord Mansfield, in delivering the opinion of the court of king's bench, in the Case of Dean of St. Asaph, 1 Ersk. 211, said: "Whether the fact alleged, supposing it to be true, be a legal excuse, is a question of

law; whether the allegation be true, is a question of fact; and according to this distinction, the judge ought to direct, and the jury ought to follow the direction; though, by means of a general verdict, they are entrusted with a power of blending law and fact, and following the prejudices of their affections or passions." And on page 217, he says: "The fundamental definition of trial by jury, depends upon a universal maxim that is without exception: 'Ad quæstionem juris non respondent juratores; ad quæstionem facti, non respondent judices.' Where a question can be severed by the form of pleading, the distinction is preserved upon the face of the record, and the jury cannot encroach upon the jurisdiction of the court. Where by the form of pleading, the two questions are blended together, and cannot be separated upon the face of the record, the distinction is preserved by the honesty of the jury. The constitution trusts, that under the direction of a judge, they will not usurp a jurisdiction which is not in their province. They do not know, and are not presumed to know, the law. They are not sworn to decide the law; they are not required to decide the law. If it appears upon the record, they ought to leave it there; or they may find the facts subject to the opinion of the court upon the law. But further, upon the reason of the thing, and the eternal principles of justice, the jury ought not to assume the jurisdiction of the law. As I said before, they do not know, and are not presumed to know any thing of the matter; they do not understand the language in which it is conceived, or the meaning of the terms. They have no rule to go by, but their affections and wishes. It is said that if a man gives a right sentence upon hearing one side only, he is a wicked judge, because he is right by chance only, and has neglected to take the proper method to be informed; so the jury who usurp the judicature of the law, though they happen to be right, are themselves wrong, because they are right by chance only; and have not taken the constitutional way of deciding the question. "It is the duty of the judge, in all cases of general justice, to tell the jury how to do right, though they have it in their power to do wrong; which is a matter entirely between God and their own consciences."

Upon consideration, then, of the whole case as presented to us upon this writ of error, we are of opinion:

1. That the indictments are insufficient, because they do not charge any offence against the true construction of the statute, inasmuch as they do not aver the bank bills, therein mentioned, to be "paper currency," or "paper medium evidently intended for common circulation,"&c. As the term "bank bill" in the act is coupled with the words, "note," "check," and "draft," which, certainly, do not of themselves purport to be "paper currency;" and as, if the indictment had been for passing a note, check, or draft, only, it would, in our opinion, have been necessary to aver such note, check, or draft to be "paper currency," to bring the case within the prohibition of the statute, we think it is equally necessary to make the averment in regard to the term "bank bill;" especially as the indictment does not set forth the bank bill, nor describe it in any manner, so that the court may judge whether it be paper currency, or not. There may be bills commonly called bank bills, which are not the bills of any bank; as may, perhaps, be the case with the notes called, by the witness (in No. 106), "notes of Cohen's Bank."

2. That the special verdict (in No. 107) is not sufficient to justify a judgment against the defendant, because it does not find that the defendant passed the bank bill mentioned in the indictment. It only finds that the defendant gave, in change to the witness, a half dollar in silver, and two one-dollar notes, which the witness "thought it likely were Maryland notes," and that these notes were passed by the defendant to the witness, "in the manner, and at the time and place stated in the evidence." We also think it insufficient, because it does not find that the notes were paper currency, which we think was necessary, for the reasons stated when considering the question of the sufficiency of the indictment.

3. That the judge erred, in the matter of his instruction, given at the motion of the attorney of the United States in No. 107, for the reasons before stated; but that he did not err by instructing the jury, as to the matter of law, after it had been argued to the jury by the counsel on both sides; it being his right and duty so to do.

4. That the fact found by the jury in the special verdict upon the indictment No. 107, that the treasurer was acting as the agent of the Baltimore and Ohio Railroad Company, chartered by congress, is no bar to the prosecution, as they have not found that the company ordered or authorized him to pass the notes. This observation will also apply to the instruction given in the other case, No. 106.

5. That there was no error in the refusal of the instruction in No. 106, that if the note "was passed by the traverser in payment of a bonâ fide debt due him to the witness, the act does not come within the prohibition of the law of congress, and the traverser is entitled to a verdict of acquittal;" there being no such exception, express or implied.

6. That there was no error in the refusal to instruct the jury, that if the defendant passed the note "with intent that the same should be carried into Maryland, and not be circulated in the District of Columbia, the defendant is entitled to a verdict of acquittal." The offence against the act of congress of the 7th of July, 1838 (5 Stat. 297), does not consist in passing the notes, &c., with intent to circulate them; but in passing such notes,

&c., of a less denomination than five dollars, as are paper currency at the time of passing them.

7. That the judge had a right, after the arguments of counsel had been heard, whether addressed to the judge or to the jury, to instruct the jury upon the whole law of the case; and this, either ex mero motu, or upon the motion of either of the parties. And if either of the parties or their counsel should pray the judge to give any particular instruction to the jury, it would be his duty either to give or refuse it; and if the defendant or his counsel should think the judge erred, either in the matter of his charge, or in giving or refusing the instruction prayed, he may have his bill of exceptions, and if the verdict should be against him, he may move for a new trial, or take his writ of error.

But the defendant's counsel have excepted also to the matter of the charge; the judge having therein stated "that the jury would take upon themselves a very great responsibility, which they ought not to do, in deciding upon the law of the case in opposition to the opinion of the judge." In this part of the charge we think there is no error, for the reasons which we have already stated. But the charge proceeds: "And that they ought not to take upon themselves to render a verdict calculated to revoke the legislation of congress, composed of many distinguished constitutional lawyers." We think that the meaning of the judge, in this sentence, was, that the jury ought not to take upon themselves, in opposition to the opinion of the court, to decide an act of congress to be unauthorized by the constitution, and therefore not law. If this is the true construction of this sentence of the charge, we think there is no error in it. The charge proceeds: "And it increases the responsibility of the jury so to decide, in this case, in favor of the defendant, upon the law, because the United States could not appeal, whereas, if they found the defendant guilty, he might appeal, and might have the law interpreted, and reverse the judgment if erroneous." We see no error in this sentiment. The judge, in his charge, further said "that if the fact was proved, of passing the notes once, the case was brought within the act of congress." The bill of exceptions does not profess to set out the whole charge of the judge. It is reasonable to suppose that this part of it was given in reference to the question whether it was not necessary for the United States to prove that the defendant circulated the notes, or whether the offence might be committed by simply passing the notes by the defendant to the witness. In this view, the instruction was correct.

It is also suggested that the judge erred in stating in his charge, "that if the facts were proved to the satisfaction of the jury, the case was brought within the act of congress."

It does not appear what those facts were. But as this appears to be only an iteration of the opinion expressed in the first bill of exceptions, in the case No. 106, it is presumed that the judge alluded to the facts stated in that bill of exceptions. If so, we have already decided that those facts do not bring the case within the statute. We think, therefore, there was error in this part of the charge.

We have thus endeavored to consider and decide all the questions suggested as arising upon this record; and the result of the whole is, that the judgments must be reversed, with directions to the judge to arrest the judgment upon each of the verdicts, on account of the insufficiency of the indictments.

THRUSTON, Circuit Judge, dissented, having previously delivered his opinion orally.